May I? Good morning. May it please the court. My name is Molly Quinn, and I represent the appellant, Justin Morales. We're asking the court to reverse the order dismissing Mr. Morales' 2255 motion for failure to state a claim and remand for resentencing without the enhancement for a felony drug offense. The district court granted the motion to dismiss the 2255 petition solely because it found that Mr. Morales could not show prejudice from defense counsel's failure to challenge whether his Kansas conviction qualified as a felony drug offense. And this was wrong for three reasons. I'll start with the supervised release term. The 851 enhancement doubled the mandatory minimum term of supervised release. It doubled both the statutory term, which would have been five years to life without the enhancement. It became 10 years to life with the enhancement. And it doubled the guideline term, or the recommended guideline sentence of supervised release, which again was five years without the enhancement and 10 years with the enhancement. Mr. Morales received the mandatory minimum 10 years of supervised release. And in denying his 2255 motion for lack of prejudice, the district court did not address the effect of the 851 enhancement on the supervised release term, only on the custodial sentence. Morales, in his 2255 motion, specifically the memorandum in support, specifically listed the enhancement to the supervised release term, as well as the custodial term. In your experience, in that kind of a situation, I know that the government kind of pushes back and says, well, there's no reason why the district court wouldn't have imposed that lengthy term. Is that, and I don't know if you can answer this, but is it common to go above that mandatory minimum term of supervised release in this kind of case for the district courts in South Dakota? I don't want to over speak. I don't have evidence in front of me. I think we, I guess I don't think it's particularly common. And in this case, we see the district court select the lowest possible term under the statute. And so that provides us evidence, in this case at least, that the district court didn't say, I can go anywhere from here up to life. I'm going to select the 10 years. And I would, it's, yeah, it seems like in these drug cases, the fighting area is the custody sentence. Maybe in other areas, like sex offense cases, it seems like there's more conversation about the term of supervised release. And I realize you might not be able to answer that, but it just got me thinking about how courts look at the term of supervised release, depending on the type of conviction. Right, I guess, again, I can't answer that with specifics, but I would say, technically it would be, in terms of the supervised release, an above guideline range sentence to, if the term were five years, the 10 years would be above. And so I think that gives us some indication that in these cases, at least in this case, there is a reasonable probability that Mr. Morales would have received a shorter term of supervision. And I would note that, Judge Kelly, like you noted, maybe there's not always specific conversation at sentencing hearings in drug cases where there are enormously long custodial sentences at stake. This court and the Supreme Court's case law reminds us that the supervised release term is important, that it is considered part of the sentence, and it imposes significant restrictions on a person's liberty once they're released from the custodial portion of their sentence. I would point the court to Gall, which was talking about a probation term, but the same general principle applies. And a person, including Mr. Morales, would face very serious penalties if they violate the terms of supervised release, including additional prison time and further supervision, which can continue that cycle. And our position is that, in this case, the effect of the 851 enhancement on the supervised release term on its own is enough to show prejudice, and that would be enough to reverse the district court's order, dismissing for failure to state a claim. And I'll move to prejudice in terms of the custodial sentence. And there is a reasonable likelihood, under the facts of this case, that Mr. Morales would have received at least somewhat of a shorter custodial sentence, which is all we're required to show, had the defense counsel properly challenged the enhancement. And I'll start with the district court's variance. Now, a variance, of course, is a sentence below the guideline range based on the 3553A factors. One of those 3553A factors, factor A3, is the kinds of sentences available. And so if there was a change to the kinds of custodial sentences available, reducing it by half from 20 years to 10 years, there is a reasonable likelihood that the district court's consideration of the 3553A factors as a whole would have resulted in a lower sentence than the 30 years. And in this- Is the district court that ruled on this the same district court that sentenced him? It is. Do we factor that in? It's sort of an interesting part of the case. I think I would answer that by pointing to the posture of this case, that this was a motion to dismiss for failure to state a claim without an evidentiary hearing. And so there wasn't really an opportunity to kind of raise the nuances of these issues with the district court. And I would kind of refer back to, at the time of the sentencing hearing, this was, the 851 enhancement admittedly was an issue that defense counsel contested on different grounds, not on this ground. And this sentencing hearing went two days. This was a deeply contested issue. And the district court, in giving its explanation of the sentence, did not say what courts often say, which is, I would have given you the same sentence regardless. So we're missing kind of that piece of, which would give us a clear indication that there would be no difference in the statutory term. And the last reason that there's a reasonable probability that Mr. Morales' custodial term would have been shorter is that, on this record, there are indications that he may have appeared before the sentencing court having accepted responsibility. That at both a status conference before trial, shortly after the filing of the 851. What is the evidence of that? Right. So I'll point to two points in the record. One is, first is the status conference. And this was, I don't have the exact dates here, shortly after the 851 enhancement, where defense counsel said, we're requesting a continuance of this trial because the status of the 851 enhancement may affect our plea negotiations. And I would, it's in appendix page 130, I believe. And defense counsel stated, if that, meaning the, I guess, what was determined to be a collateral attack in Kansas is resolved favorably for Justin, we might be able to resolve this. No promises. Later, he wishes to wait to go to trial until we know what the result is because the result of that is that it can affect our plea negotiations. And she understandably did not want to go any further on that. And again, at the sentencing hearing, defense counsel actually made an objection seeking a reduction for acceptance of responsibility despite the fact that Mr. Morales went to trial, indicating that the client had told the court two different judges on at least one occasion that if it wasn't for the 851, he would have taken his 10 years and not gone to trial. And that's something that he expressed he would have done. And that's at pages 164 and 65 of the appendix. So it comes up at two points. And again, this case was dismissed without an evidentiary hearing, just on the briefing of a pro se litigant. And Mr. Morales himself actually cited a case in his objections, indicating in some cases where there's an indication where an 851 might have an effect on plea negotiations that an evidentiary hearing would be appropriate. So this would be an issue that we can't resolve on the pleadings alone, but would be appropriate for a remand for an evidentiary hearing on this prong of the prejudice analysis. That case is Mayfield. And it is cited in Mr. Morales' objections to the report and recommendation. So we believe that there is a reasonable probability that Mr. Morales' supervised release term and custodial term would have been shorter. And that's enough to show prejudice. And again, that is how the district court denied this motion and so the court should reverse on that basis. I will move on and address kind of the underlying merits about this 2003 Kansas statute. That statute was overbroad and indivisible. Again, this is not an issue that was addressed below, by the way that the claim was presented. Mr. Morales' Kansas offensive conviction covered a broader range of substances than the federal drug schedules, specifically butyl nitrite, benzyl fentanyl, and phenyl fentanyl. And I believe at this point it is undisputed on the government's part that the Kansas drug schedules did cover these three substances at least that were not included in the federal drug schedules. And so we know that the Kansas statute is overbroad and the Kansas statute was also indivisible as to drug type. Admittedly, Mr. Morales' 2003 Kansas conviction was for possession of a very small amount of marijuana. But that doesn't matter here because overall, the statute of conviction was overbroad and indivisible as to drug type. And I'll start with kind of the text of the statute itself. It is 65-4162A, and it covers kind of a range of possessions of substances. But I think it's important to clarify at this point that all five subsections have the same penalty. All five subsections are a Class A non-person misdemeanor unless a person has one of three types of prior convictions which could enhance the present offense of possession of a substance covered by that statute to what they called at the time a drug severity level four felony. And those three types of priors are a prior conviction under this section referring to the Kansas laws, the Kansas state laws, a prior conviction for a substantially similar offense from another jurisdiction, and a prior conviction, and this is where the statutory text becomes important, of a violation of an ordinance of any city or resolution of any county for a substantially similar offense if the substance involved was marijuana or THC. And there's some dispute in the briefing over what that reference to marijuana means, and I think it's clear under Kansas law, the Crank case, that that reference to marijuana is referring to a prior city or municipal or county offense that involved marijuana. And as long as that prior offense involved marijuana or THC, then it can enhance any one of the substances  the statute Mr. Morales was convicted of to a felony. And so this statute does not provide a different penalty for possession of marijuana in the instant offense where instant means the 2003 conviction. In turning to Kansas case law, I think it's fair to say that the case law is mixed on the question of divisibility. And the government cited the Lundquist case which does cite a jury instruction which was a possession of marijuana case where admittedly the marijuana wasn't the, the element was that the defendant possessed marijuana, but this court's case law makes clear that that isn't enough, that the specific factual allegation can be included in jury instructions and not necessarily make that a divisible statute or make that specific substance an element of the offense. And I think the state court record in this case at the very least doesn't speak plainly. It lists, it alleged that Mr. Morales intentionally possessed a controlled substance to wit marijuana. And our position is that that would be an indication that the element was a controlled substance and the specific fact was marijuana. I'd like to turn to the last issue of whether defense counsel was ineffective for raising this issue. This came up in the 28 J letters filed earlier this week. Defense counsel, if you take the state of the case law as a whole, defense counsel's performance fell below the objective standard of reasonableness within the meaning of Strickland. In 2015, the Supreme Court addressed the overbreath of Kansas, specifically Kansas' drug schedules and identified or said there were at least nine substances covered by Kansas' drug schedules, not covered by federal law. One of the ones that it specifically mentioned just by reference to the statute was butyl nitrite, which is one of the substances covered by the statute at the time of Mr. Morales' 2003 Kansas conviction. And so in 2015, the Supreme Court puts everyone on notice. Kansas' drug schedules are broader than the federal definition. In context where the categorical approach applies, that makes it overbroad. And in 2010, this court in the Brown case, cited in the briefs, rejected a fact-specific approach to 851 enhancements. And I won't quote the text of that right now, but that it was in 2010 where the court said there's no indication in the text or history of the statute that a particular state offense might sometimes count toward the sentencing enhancement and sometimes not, depending on the facts of the case, simply citing Taylor. And then in 2016, the Supreme Court's Mathis opinion resolved the divisibility question. I think it's fair to say that before 2016 in the Mathis case, under this circuit's law, the reference to marijuana in the prior conviction would have been enough under the way this circuit interpreted the divisibility analysis. But at the time of Mr. Morales' May 2018 sentencing, we have Malooly from 2015. We have the Eighth Circuit rejecting a fact-specific approach, citing Taylor, the categorical approach, in 2010. And Mathis kind of resolving, hey, the fact that this, the brute facts of this offense involve marijuana is not enough. So our position is that this would not have been a novel issue for a Kansas drug prior at the time of Mr. Morales' May 2018 sentencing. Unless there are further questions, I would reserve the remainder of the time. Thank you. That's fine. Good morning. May it please the Court, my friend and colleague, Ms. Quinn. Your Honor, Strickland v. Washington requires that a 2255 petitioner show a reasonable probability that the result of the proceedings, in this case, Mr. Morales' sentence, would have been different, but for the unconstitutional ineffectiveness of his counsel. That standard can't be met here. Judge Kelly, you asked the question about whether this was the same district court deciding the order on this 2255 that presided over the sentencing. Very same district court, very same district court that presided over the trial. But the district court didn't address supervised release, right? I mean, that's the thing that I struggle with here. It just didn't appear to cross her radar. So I mean, I get the argument on the custodial sentence. I don't get the argument that it applies on supervised release. And I think we've held, or at least the Supreme Court has held, that is an important element. So help me get around that, other than what I understand the argument to be, and that is this was a bad guy who was likely to get a lot of supervised release, because that seems pretty thin. Well, I'll say a couple of things. Number one, the reason that this wasn't really raised below was because, as a pro se, 2255, it didn't mention this issue. This is an issue raised for the first time on appeal, which sometimes happens in these 2255s. At the originals. Ms. Quinn said it wasn't listed in the pro se 2255? I don't believe it. The supervised release term? I don't believe it was, at least not to my mind. He talked about the fact that he, because of the 851, appeared before the court as a recidivist defendant, that that changed his sentencing profile. But I don't believe supervised release was specifically mentioned. We can check. We can all check that. Sure, yeah. And I may be wrong, Your Honor, but that's my recollection. At the sentencing itself, there was scant discussion, but discussion at the end of the sentencing about the supervised release term. What Judge Schreier said was, you have a significant criminal history. That means when you get out, you are at great risk of getting into trouble again, and you'll be on supervised release for a long time. And that's with the backdrop. It's a 10-year mandatory minimum on supervised release here, and a guideline range of 10 years. Right. And that's with the backdrop of the mandatory minimum that was in place. That's right. To get to that question, in terms of a remedy of potentially a limited remand on this question of what the supervised release term should be, the court then has to also address the performance prong of Strickland. You don't get to either one. Do we have to address that, or could the district court address that? Well, I don't know that there's a remedy of remand here unless we find that the guy, I suppose it could be for a separate hearing without deciding the ultimate question of whether this 2255 should have been dismissed. But it strikes me that to get to the question of whether or not the prejudice happened. But the problem is the district court didn't wrestle or didn't resolve that issue, right? Didn't address prejudice, didn't resolve the Kansas issue. Although I think the court acknowledged it's not an easy call. Why shouldn't the district court have the first shot at that if we find that there was prejudice? Well, it's the nature of Strickland analysis that either performance or prejudice can, each on its own, can sink the whole ship. And here the district court found, look, we don't need to delve into performance because prejudice sinks the whole ship, to use probably a bad metaphor. But I think then in order to remand, then you also have to determine, well, does performance sink the whole ship on the Strickland level? And I heard the tail end of the discussion of appellant's counsel just before talking about the performance element. You know, what strikes me is that kind of stepping back from I think what's fair to characterize is this post-Mathis morass of courts having to deal with very difficult, and as this court has said multiple times, I think even just earlier this week in an opinion, that these are complicated issues where you post-Mathis, we have this list of factors that we look at when we apply them to various state statutes and we delve into state jury instructions and the text of the statutes and all these different opinions. On a 2255, we have to step into the Wayback Machine, right, and go back to May of 2018. That's pre-Bolaine in this court, pre-Oliver, of course, pre the case this week. Look, as this court knows, in this very session of this court, there are arguments going on about the divisibility of certain state predicate drug statutes. Defense counsel points largely to the Mullooly case in saying that that harkens back to this court's case in 2010, the Brown case, determining that the categorical approach applies to these questions. Well, Mullooly itself, of course, came from this court. And in the underlying case there, there was a circumstance-specific approach forwarded by the lawyers in the case. And the court at the end of that underlying opinion says these are difficult academic questions that we'll save for another day. In other words, this court itself didn't feel constricted by the Brown opinion that that issue had been decided when it decided the lower case in Mullooly. Mullooly itself deals with an immigration statute that has a direct reference to the Controlled Substance Act schedules. Here, of course, we're dealing with the definition in 802-44 of a felony drug offense. So not tethered to the schedules. So a different- Yeah, I have a question about your argument. I sense you're sort of fleshing out your 28J argument. But as I read your brief, this wasn't part of your first prong of Strickland argument. In other words, as I read your brief, you were saying, well, in the lower court, you were saying, look, Mathis doesn't apply to 851s. And then now I hear or read you to be saying, well, it's divisible. The Kansas statute's divisible. So therefore, there's just- that's not ineffective. Can you raise a new argument? And I'm just wondering, when you raise a new argument in a 28J that really was available to you before, we don't have any briefing on it. Have you waived that particular argument as to the first prong? I understand the point, Your Honor. And I think that, again, it deals with the Strickland analysis and how I don't think the court can grant a remedy based on one prong of Strickland without also then looking at the other prong of Strickland, right? Right. Oh, no, and I hear you loud and clear on that. We've got- it's got two prongs. But I'm trying to get- but you take a position on each prong. And that's my point. This wasn't your position below or even on the briefing. And so it seemed to me that what the issue was, is this indivisible or not as to performance? And so I feel like we've sort of added some things into this analysis that just weren't presented. And I'm just curious as to whether you think you've sort of- if- all right, I'll add another- has that ship sailed for you? I hear what you're saying, Your Honor. I do get the point. I guess my- we're here on a record that came through the district court on one side only, on the prejudice side only. And then when faced with, well, how do you respond to that? It feels like an answer to that question necessarily requires you to walk down the other avenue. And that's, I guess, why we're both talking about the performance prong in some respect here. My broader point, Your Honor, is that I was, you know, trying to make about that performance discussion. This is messy stuff. And it's messy stuff in October 2022. I read the- especially the reply brief of my colleague, Ms. Quint, makes some very good points in response to our arguments about the divisibility of this Kansas statute. If I were standing here on a preserved direct appeal on these questions, I'd be optimistic. But I'd be concerned about the government's position. That's not the standard that applies here today. The standard is about, you know, reasonably effective counsel back in 2018. And maybe the biggest point to make, which dovetails with the prejudice side, this wasn't counsel sitting on her hands with respect to this 851. In fact, there was a full-throated argument about the validity of this 851. There was an entire, almost entire half of a sentencing, two-day sentencing hearing devoted to putting on evidence regarding a collateral attack on this Kansas statute. And it was effective. It was practically effective in the sense that here we then had the district court referring to this offense as a reason for a downward variance or departure. The court, you know, listened to those arguments. And counsel was effective in minimizing the effect of that 851 to the point that Judge Schreier looked at it as a reason to sort of discount Mr. Morales' criminal history, knock him down from a term of life, which was what the guidelines term was, with or without the 851, and took him down to 360 months. That was the sole reason the district court, in fact, pointed to. So it was effective. And it also was a reason why he wasn't prejudiced here. Very hard to say that this was unconstitutional level ineffective assistance of counsel. And also, as the district court had said, there is no reasonable probability that the sentencing profile would be different. And there's no prejudice here. Now, I get the court is concerned about this supervised release term. I think that the way to, if the court wants to change that term, there's a few ways it potentially can be done. I do think you have to address the performance element to determine whether this 2255 should have been dismissed or not. But if you get to that point and want to come up with a remedy for the supervised release, the court can correct the sentence and lower that supervised release down to the five-year term if it finds that there's evidence that that would be what the court would have done. The court can remand on a closed record on that question alone about the supervised release term. So those are two options that I put forth is what I think is sort of the remedy on that question. Mr. Morales himself in his 2255 submissions wasn't concerned about the supervised release. He was concerned about how this 851 affected his 30-year term. And I think it's clear both that it didn't in any substantial way affect his term of imprisonment. And it's also clear that his lawyer did everything she could at the time and everything that was reasonable for a lawyer to do in May of 2018 to try to avoid that enhancement. On the other issue, sort of the issue that seems the most fact-based or evidence-based would be the third point that opposing counsel made, which was, boy, this really affected whether I was going to plead or not. And I think that's a reality that that makes a big difference in that calculus for a person as to whether they're going to plead or trial. Is that something that if you got through prong one that that would be right for an evidentiary hearing? Well, I would certainly hope that the court would give us a chance to put on some evidence regarding the plea negotiations if the court wants to remand this case and disagree with the government here. There's no evidence about the government side of those plea negotiations. Why is that? Well, because it wasn't mentioned in the 2255 filing. So it wasn't addressed then by defense counsel's affidavit. And so here we are with this notion being raised from a few spotty references in the record about suddenly I would have pled guilty if this 851 weren't there. Well, I don't think those scant references in the record are enough. For instance, this court doesn't know what were the terms of any plea agreements that had been offered by the government. So you agree that an evidentiary hearing would be appropriate on that issue, at least to flesh out that part of the claim. If the court ultimately believes that that's a reason why Mr. Morales was prejudiced to the extent that his 2255 should be granted, we certainly would like an evidentiary hearing on that question. So we could put on evidence about, for instance, when was a plea agreement even offered in this case? We don't know that on this record. Was it offered long before the 851 notice? If so, it's hard for Mr. Morales to say, look, I would have accepted a plea if it weren't for the 851. We don't know those facts on this scant record at this point. And so yes, if the court decides that that alone is prejudiced enough to overcome the Strickland burdens, we would want an evidentiary hearing on that question. Thank you, Your Honors. Thank you. Thank you. I'd like to start just to clarify the record on when Mr. Morales raised the effect of the 851 on his supervised release sentencing range. It's in his memorandum in support of the 2255 motion at appendix page 24 through 25. The heading subsection C says that he suffered prejudice in the form of higher mandatory minimums, in plural, because of the erroneous application of the 841B1, 851A enhancement. And then on the next page, he indicates that he was erroneously subjected to a mandatory minimum term of imprisonment of 20 years and a mandatory minimum term of supervised release of 10 years. And then he says later on that had there been a proper challenge, he only would have been subjected to a mandatory minimum term of imprisonment of 10 years and a mandatory minimum term of supervised release of five years. Do you agree with your, if we disagree with Judge Schreier on prejudice as it relates to supervised release, do you agree with your colleague that then we have to go and address performance prior to remanding the case? I don't believe so on the kind of the way this, the record of this case and the way that it came to this court, which is a motion to dismiss for a failure to state a claim, where it's denied on a prejudice issue where I think there are significant evidentiary and factual questions. And the case was presented to the district court as this is a totally non-meritorious issue that Mathis doesn't apply at all. And that the position of Mr. Morales was without merit. So I think it, I do not think that we would have to prevail on both prongs in order to remand for further consideration of this case in light of the way that it developed and the reasons that this was dismissed for failure to state a claim. So what specifically would you be asking? If you could write this opinion, what would you be putting in it? Well, our request is a remand for resentencing without the enhancement. But we've got, okay, that's what you, all right. So on this record, so we don't have a ruling on prong one. And so maybe to follow up on Judge Cobus' question, trying to see what's the relief that, from this court, on this appeal. Absent what I just said, we would, I think, ask the court to reverse the order, which again is finding no prejudice and remand for further proceedings to allow a full evidentiary hearing on both issues, supervised release and custody. I think there are kind of significant nuances that haven't been developed there. And then as to the, I was just, on the first prong, just trying to figure out procedurally, again, following up on the questioning, would you then be asking the district court to revisit prong one? Is that, would that be your request? I think it would be appropriate for the district court to visit prong one in the first instance. If that addresses the question. Yes, yes. On prong two, the district court, I mean, would we send it back for only reconsideration or consideration of, I guess we would reverse on the supervised release issue, arguably, in this hypothetical here. Would that be sufficient for your purposes or would we have to address the plea bargain issue as well? We would ask for a remand for the full sentence, including because- What did the district court do on the plea bargain issue? I don't recall off the top of my head. I think the most explicitly it was raised below in terms of the 20 to 55 proceedings was Mr. Morales' pro se cite to the, I think it's the Mayfield case, which encompasses these issues, but did not explicitly raise them. I am out of time. I thank the court for their time this morning. Thank you.